# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6869 | **DATE** | 1/11/2002 |
| **CASE TITLE** | Primax Recoveries v. Sevilla | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiff's Motion for Summary Judgment (#16-1);
> Defendant's Motion for Summary Judgment (#26-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, this Court **GRANTS** Defendant's Motion for Summary Judgment (#26-1) and **DENIES** Plaintiff's Motion for Summary Judgment (#16-1). All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 15 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | | 60 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | courtroom deputy's initials | 02 JAN 14 PM 1:53 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PRIMAX RECOVERIES, INC.      )
     Plaintiff,      )
     )     **CASE NO. 00 C 6869**
     v.      )
     )     **JUDGE WILLIAM J. HIBBLER**
RICHARD SEVILLA      )
     Defendant.      )

### MEMORANDUM AND ORDER

The parties in the present case have filed cross-motions for summary judgment concerning insurance plan reimbursement matters. The motions are fully briefed and the court has examined the parties' submissions. The court finds Plaintiff may not obtain the relief sought in federal court and, therefore, Defendant's motion for summary judgment must be granted.

**DOCKETED**

**JAN 1 5 2002**

### Background

Defendant Richard Sevilla ("Sevilla") was injured in an automobile accident in 1992. His medical expenses were covered under his health insurance policy, issued by Continental Assurance Company ("CNA") through his employer Central Can Company ("CCC"). Sevilla received $2,483.71 in medical benefits from CNA. Sevilla prosecuted a tort claim against the third party responsible for the accident and eventually settled his lawsuit for $22,000. Continental Assurance Company assigned Plaintiff Health Cost Controls

1



("HCC"), now known as Primax, to collect reimbursement of medical benefits from Sevilla's settlement fund.  Primax sent notice of a lien to Sevilla's attorney for the amount of money CNA had paid out in medical care.  Primax claimed Sevilla's health insurance policy contained a reimbursement provision that stated in relevant part:

> In no event will the amount of reimbursement to US [the insurer] exceed the lesser of:
> 1. The amount actually paid under the policy; or
> 2. The amount actually recovered from that part of the judgment or settlement in excess of the amount necessary to fully reimburse the Covered Person for out-of-pocket expenses incurred, including attorney fees.

(Pl. Compl. at Ex. A.)

The settling tortfeasor's insurance carrier issued a check in the amount of the lien, but made it payable to three parties: Sevilla, his attorney, and Primax.  Primax retained possession of the check.

Sevilla and his attorney subsequently refused to endorse the check and claimed the amount of Primax' recovery was subject to Illinois' common fund doctrine; they demanded Primax' asserted reimbursement amount be reduced by one-third to reflect the attorney's fees Sevilla incurred during settlement with the tortfeasor, as mandated by Illinois state law.  Primax filed a complaint in the Circuit Court of Cook County to require Sevilla and his attorney to endorse the check in its purportedly full amount.  Sevilla responded with

2

a counterclaim, filed both on his behalf and as a representative of a class action group based upon the alleged failure of Primax and CNA to honor the common fund doctrine, and argued under the common fund doctrine, Primax and CNA must pay attorney's fees incurred during the recovery of funds from a third party tortfeasor.

In 1995, Primax sought to remove its complaint to the federal district court and argued Sevilla's counterclaim raised federal questions under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001. Primax failed and the court remanded the action to state court.

In 1997, Primax attempted to dismiss its state complaint and the state class action on grounds all the state claims were preempted by ERISA. The trial court dismissed the cases, but the Illinois Appellate Court reversed, held the state courts had jurisdiction over both actions and reinstated Sevilla's counterclaim. The Illinois Supreme Court denied Primax' petition for certiorari. Sevilla's counterclaim remains in state court; Primax has not taken any steps to reinstate its complaint in the state court action.

In 1998, after the trial court dismissed on grounds of federal preemption but before the Illinois Appellate Court reversed that dismissal order, Primax sent Sevilla and his attorney a letter stating Primax and CNA "irrevocably waived

3

and released any and all rights and claims to subrogation and/or reimbursement that they may have had, now have, or hereafter acquire concerning an accident involving Richard Sevilla which occurred on or about May 23, 1992." (Def. LR 56.1 SOF Ex. L.)

In March, 2000, Primax attempted to moot Sevilla's class action counterclaim and argued that since Primax had waived its rights to any claims it had against the insured, then no individual or class claims existed before the court. Primax then sent a second letter to Sevilla and repeated Primax has "irrevocably waived any and all rights and claims to subrogation and/or reimbursement it may have had concerning the May 23, 1992 accident involving Richard Sevilla. HCC therefore has no interest, and claims no interest, in the settlement proceeds due Mr. and Mrs. Sevilla and their attorney." (Def. LR 56.1 SOF Ex. P.) The trial court denied Primax' motion to dismiss Sevilla's counterclaim.

Now, Primax asks the Court: 1) to grant a declaratory judgment establishing the relative rights and obligations of the parties; 2) to enjoin Sevilla from interfering with the health plan's rights to subrogation and reimbursement; 3) to interpret the material provisions of the subrogation and reimbursement provision of the Plan for the purpose of determining the applicability of the fund doctrine; 4) to

determine the parties' equitable rights to funds in the amount of $2,483.71; and 5) to award it such reasonable attorneys' fees and costs. Primax argues its claim involves an "employee welfare plan" covered under ERISA and thus federal jurisdiction is appropriate. 29 U.S.C. §1132 (e) (1), 28 U.S.C. §1331. Primax also maintains because ERISA preempts state law, its claim must be heard in federal court.

## Standard of Review

A motion for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (C). In deciding whether summary judgment is appropriate, the court must view all evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242 (1986)*; Bartman v. Allis-Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir. 1986). A genuine issue of material fact exists when the evidence presented is such that a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 250-51. The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

## ANALYSIS

5

## I. Jurisdiction

Sevilla's employer created an ERISA-governed benefits plan when it purchased insurance from CNA to provide medical coverage to its employees and families. *See* 29 U.S.C. §1002(1)(A)(the terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program established or maintained by an employer for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits); *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000)(a "plan" "comprises a set of rules that define the rights of a beneficiary and provide for their enforcement. Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan.").

CNA fully assigned Primax whatever legal claims CNA may have regarding the management of the Plan and Primax administers the Plan's reimbursement assets as Primax' assets. Thus, as has been established in earlier cases involving Plaintiff, Primax is a fiduciary of the Plan. *Health Cost Controls v. Washington*, 187 F.3d 703, 709 (7th Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000)("Health Cost [now known as Primax] is a fiduciary."); *Health Cost Controls v. Bichanich*,

968 F.Supp. 396, 299 (N.D.Ill. 1997)("Thus, HCC [now known as Primax] is a fiduciary under ERISA and has standing to prosecute its claims under 29 U.S. §1132(a)(3)."). As a fiduciary, Primax may attempt to obtain recoupment of Plan benefits only through equitable or injunctive relief, per 29 U.S.C. § 1132(a)(3). ("A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.").

Further, the other federal and state courts in this matter have already stated the appropriate time to commence federal court litigation is often an issue in recoupment litigation. To show a "case or controversy" exists for the purposes of Article III, a plan fiduciary must establish three elements:

> First, the party must have suffered an "injury in fact," consisting of an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." ... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61
(1992)(citations omitted); *see also Franklin v. Massachusetts*,
505 U.S. 788, 801 (1992).

If a plan fiduciary plaintiff is seeking declaratory or
injunctive relief, then the alleged controversy must be of
sufficient immediacy and reality. *Maryland Cas. Co. v.
Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also
McCotter v. Longo*, No. 95 C 5985, 1997 WL 158325, at *3
(N.D.Ill. Mar. 31, 1997). In other words, "it must be
possible to fashion a decree of conclusive character as
distinct from an advisory opinion based on a hypothetical
state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d
10, 17 (2nd Cir. 1993)(citing *Aetna Life Ins. Co. v. Hayworth*,
300 U.S. 227, 241 (1937)). Further, "injunctive relief is
not appropriate to prevent the possible occurrence of an event
at some indefinite future time." *Janowski v. Int'l Bhd. of
Teamsters*, 673 F.2d 931, 940 (7th Cir. 1982). The immediacy
element "must be determined on a case-by-case basis." *Olin*, 5
F.3d at 17.

Here, while Primax is an ERISA fiduciary, its complaint
is not within the exclusive jurisdiction of the federal courts
under ERISA's civil enforcement provision because it does not
seek relief provided under Section 502(a)(3). *Great-West Life*

& *Annuity Ins. Co. v. Knudson*, No. 99-1786 (U.S. January 8, 2002)(Slip Opinion).

In *Great-West Life*, the Supreme Court recently addressed facts and claims very similar to those in the present case and held Section 502(a)(3) expressly allows only traditional equitable relief and may not be stretched by the courts to include other remedies not specifically mentioned by Congress. "Equitable relief must mean **something** less than **all** relief.... [Including legal remedies] would limit the relief not at all and render the modifier ('equitable') superfluous." *Id.* at 4 (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 257-58 (1993)). The Court found the health plan in that case could not utilize this civil enforcement provision when it asserted a claim against its beneficiaries for repayment arising out of the plan's alleged right to reimbursement. In particular, Great-West, the fiduciary of the Plan and the petitioner in that case, sought an injunction, restitution at law or a trust to enforce the reimbursement provisions of the Plan. The Court ruled such remedies are not available under Section 502(a)(3) because Great-West's asserted claims were legal, rather than equitable, in nature. *Id.* at 5-15.

> In the very same section of ERISA as § 502(a)(3), Congress authorized "a participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or equitable.

> 29 U.S.C. § 1132(a)(1)(B). But Congress did not
> extend the same authorization to fiduciaries.
> Rather, § 502(a)(3), by its terms, only allows for
> equitable relief. We will not attempt to adjust
> the carefully crafted and detailed enforcement
> scheme embodied in the text that Congress has
> adopted. Because petitioners are seeking legal
> relief--the imposition of personal liability on
> respondents for a contractual obligation to pay
> money-- § 502(a)(3) does not authorize this action.

*Id.* at 16-17 (citations omitted); *also quoted Wal-Mart Stores Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)("A claim for money due and owing under a contract is quintessentially an action at law.").

As in *Great-West Life*, Primax also seeks injunctive relief under Section 502(a)(3) for Sevilla's alleged failure to reimburse the fiduciary pursuant to the terms of the Plan. However, the Court made clear in *Great-West Life* that this civil enforcement statute does not permit Primax' cause of action. Thus, Primax' complaint is beyond the scope of Section 502(a)(3) and outside federal jurisdiction. Primax' complaint must be dismissed for lack of subject matter jurisdiction.

## II. Waiver

Further, even if Primax could portray the relief it seeks as equitable relief available under Section 502(a)(3), e.g. a constructive trust[1], this court lacks jurisdiction over

---

[1] The Court appears to indicate the imposition of a constructive trust could qualify as equitable relief under Section 502(a)(3).

Primax' claims because of a lack of a case or controversy due to Primax' waiver of its claims and rights.

## A. Definition

The definition of the common law concept of waiver is well-established in the Seventh Circuit.

> Waiver is a voluntary and intentional relinquishment of a known right. It arises from a unilateral, affirmative act by the insurer. The party claiming waiver has the burden of proving that the insurer's words or conduct were inconsistent with an intent to rely on the provisions of the policy. The evidence must be clear, precise, and unequivocal.

*Loyola Univ. of Chicago v. Humana Ins Co.*, 996 F.2d 895, 901 (7th Cir. 1993)(citations omitted); *accord Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647-48 (7th Cir. 1993); *see also Andrew Ryder v. Bank of Hickory Hills,* 585 N.E.2d 46, 49 (Ill. 1991)(waiver is "the intentional relinquishment of a known right"); *Sexton v. Smith,* 492 N.E.2d 1284, 1288 (Ill. 1986); *In re Estate of Rowena G. Ferguson v. Russell Moore,* 730

---

"The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable -- the imposition of a constructive trust or equitable lien on particular property -- but legal -- the imposition of personal liability for the benefits that they conferred upon respondents."

*Id.* at 9, 16; *see also* Justice Ginsburg's Dissent at 3 ("Although the Court recognizes that it need not decide the issue, its opinion surely contemplates that a constructive trust claim would lie."). However, Primax cannot allege a constructive trust claim, because the funds to which it claimed possession were not in Sevilla's possession, i.e. Primax had possession of the check from Allstate. *Id.* at 8-9. Later, Primax waived its rights related to reimbursement and mailed Sevilla a check for the full amount.

N.E.2d 1205, 1210 (Ill. App. Ct. 2000)(substantive rules of law, statutory rights and Constitutional rights may be waived as long as "the waiver is knowing, voluntary and intentional").

## B. Availability

The common law concept of waiver may be available in ERISA matters. The Seventh Circuit "has already determined that all common law concepts are not automatically inapplicable in the ERISA context." *Trustmark Life Ins. v. Univ. of Chicago Hospitals*, 207 F.3d 876, 881 (7th Cir. 2000)(citing *Thomason*, 9 F.3d at 647). When it passed ERISA, Congress expected "a federal common law of rights and obligations under ERISA-regulated plans would develop." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). The courts may cultivate such a federal common law where ERISA itself does not expressly address the issue. *Id.* (quoting *Thomason*, 9 F.3d at 647). Further, federal courts may use state common law as a foundation when constructing a federal common law that implements the policies underlying ERISA, where such a judicially created concept is not inconsistent with congressional policy concerns. *Id.* However, the specific common law principles of "(w)aiver and estoppel are distinct concepts" and are not equally applicable. *Thomason*, 9 F.3d at 650. Thus, courts must

12

distinguish carefully between the two similar but distinct concepts, since the Seventh Circuit has found while "(e)stoppel principles can be applied to certain ERISA actions," whether waiver principles are applicable to ERISA cases remains an open question the courts continue to clarify. *Id.* at 648-50 ("The requisites to finding a valid waiver of a known right are not as well established as the requisites to finding an equitable estoppel."); *see also Trustmark*, 207 F.3d at 881-83; *Foster G. McGaw Hosp. of Loyola Univ. of Chicago v. Bell Indus., Inc.*, No. 94 C 3987, 1996 WL 3964, at *4 (N.D.Ill. Jan. 2, 1996); *Sherman v. Pleasant View Nursing Home, Inc.*, No. 92 C 6302, 1994 WL 66080, at *5 (N.D.Ill. Mar. 3, 1994).

### C. Application

In the present case, Primax repeatedly waived any possible recoupment rights and issued its statements of waiver knowingly, voluntarily and intentionally. The Court counts no less than five times in the record where Primax goes out of its way to state it was waiving any and all claims to reimbursement. *See* Primax' April 8, 1998 letter to Sevilla (Def. LR 56.1 SOF Ex. L) ("This will confirm that [HCC and CNA] have irrevocably waived and released any and all rights and claims to subrogation and/or reimbursement they may have had, now have or hereafter acquire"); Primax' May 25, 2000 letter

to Allstate (Def. LR 56.1 SOF Ex. P)("[HCC] has irrevocably waived any and all rights and claims to subrogation and/or reimbursement it may have had concerning the May 23, 1992 accident involving Richard Sevilla. HCC therefore has no interest, and claims no interest, in the settlement proceeds due Mr. and Mrs. Sevilla and their attorney."); Primax' Reply to Sevilla's Mot. for Summ. J. at 6 ("There is no dispute that Primax waived its right to reimbursement from Sevilla of the medical benefits provided to him as a result of the accident."); Def. LR 56.1 SOF Ex. N at 2; Def. LR 56.1 SOF Ex. O at 4 ("HCC, HCCA and CNA have unequivocally, unconditionally and irrevocably renounced any rights they may ever have had to reimbursement from Sevilla or the $2,483.71 check held by Sevilla and Burnes that names HCC as an additional payee. HCC is no longer seeking the reimbursement it sought in its complaint against Sevilla and Burnes.").

Primax' waiver was unambiguous and asserted clearly Primax' desire to relinquish all claims to reimbursement rights. Primax waived any discussion and analysis of ERISA issues here when the company completely waived all rights, including rights to equitable relief, related to its reimbursement policy. Primax did not provide qualifying language to attempt to distinguish and preserve any rights it may later choose to assert directly or indirectly here.

14

Rather, Primax put forward a blanket waiver to renounce Primax' rights to the funds. Additionally, Primax took affirmative actions by mailing letters to Sevilla and Allstate, the third party driver's insurance carrier, to inform Sevilla and his attorney that Primax relinquished its rights related to and arising out of the reimbursement. Further, Sevilla was not alone in reasonably interpreting Primax unqualified waiver as a total waiver of Primax' rights to reimbursement. In response to Primax' waiver of its recoupment rights, Allstate reacted accordingly and issued a new check payable only to Sevilla and his attorney, which they have not yet redeemed. (Def. LR 56.1 SOF Ex. Q.)

Primax' words and actions refute its contention its waiver was limited to non-ERISA claims. Thus, the company cannot ignore its past conduct and now attempt to assert its waiver was limited in scope.

### D. Consideration for a Waiver in ERISA cases

Primax argues its waiver is ineffective to surrender its claims here because Primax failed to obtain consideration in exchange for its waiver, and cites *Thomason v. Aetna Life Insurance Company*, 9 F.3d at 648-49, to support this theory. However, Primax misreads *Thomason*; moreover, Primax received adequate consideration.

In *Thomason*, the Seventh Circuit dealt with an implied waiver by an insurer to an insured in which the insurer "apparently" waived its right to rely on the express terms of the life insurance coverage policy based upon its "misleading representations". *Id.* at 647, 649. As stated above, the emerging ERISA common law on waiver is not yet fully defined, so while the court declined to apply general waiver principles to that ERISA claim, it left "open the question of whether some waiver principles might apply in the ERISA context." *Id.* at 647. However, the waiver in *Thomason* was an implied waiver, consisting of an alleged "misleading representation" suggested to the insured; in the present case, Primax' waiver was express, unequivocal and clearly stated to Sevilla, his attorney, Allstate and the courts. This court believes Primax' waiver here is dissimilar and distinguishable from the waiver alleged in *Thomason* and is the type of waiver the Seventh Circuit would consider appropriate to enforce.

Further, unlike *Thomason*, Primax' claims do not address or effect benefit or coverage issues under ERISA; rather, Primax' claims involve the company's rights to assert reimbursement without any offset for attorney fees incurred by Sevilla to obtain the settlement under the common fund doctrine. The Seventh Circuit has held such claims do not implicate ERISA concerns and fall outside its protections.

In *Speciale v. Seybold*, 147 F.3d 612 (7th Cir. 1998), Ms.
Speciale was injured in an automobile accident, her employer's
health plan paid the majority of her medical bills and she
filed her own tort claim against the other driver and settled
the claim. *Id.* at 614. Ms. Speciale then filed a motion to
adjudicate in state court and requested the court to apportion
the settlement funds between her health plan and other medical
care providers who maintained they were entitled to
reimbursement for their payment of her bills. *Id.* Her health
plan argued her motion was completely preempted by ERISA and
removed the action to federal court. *Id.* at 615. The Seventh
Circuit reversed the removal order and remanded the action to
state court. *Id.* at 617. "Although Speciale was a plaintiff
entitled to bring a claim under the [P]lan, her claim of
personal injury was not a cause of action that falls within
the scope of an ERISA provision nor did her state law claim
require resolution of an interpretation of the contract
governed by federal law." *Id.* at 615. The Court concluded

> in a state cause of action where there are
> adversarial claims to a settlement fund between an
> ERISA plan subrogation claim and other statutory
> medical liens, there is no preemption under §502(a)
> [ERISA's civil enforcement provision] and the
> allocation of the funds is a matter for the state
> court... The plaintiff's personal injury case has
> been settled. [The Plan's] subrogation right has
> not been questioned. What remains is simply a
> determination on the apportionment of the funds
> under state law.

17

*Id.* at 617.

The Court in *Speciale* relied upon *Blackburn v. Sundstrand*, 115 F.3d 493 (7th Cir. 1997), and found that case "directly controlling." *Id.* at 616. In *Blackburn*, the Court again addressed facts very similar to the facts in the present case: after an automobile accident, the Blackburns received medical care under their employer's medical plan; once the Blackburns settled with the other driver, the plan demanded reimbursement, refused to recognize Illinois' common fund doctrine to reduce the reimbursement amount to reflect the Blackburns' attorney's contingent fee contract and argued the doctrine was preempted by ERISA. *Id.* at 494. The Seventh Circuit held ERISA did not preempt the Illinois common fund doctrine and explained the doctrine was unrelated to ERISA. *Id.* at 495 (affirming *Scholtens v. Schneider*, 671 N.E.2d 657 (Ill. 1996)). "Illinois' common-fund doctrine, like its parallel in federal law, is not about employee benefit plans.... Most applications have nothing to do with health insurance in general, or employer-sponsored plans in particular." *Id.* (citations omitted). As in the present situation, the plan in *Blackburn* distorted Congress' intent and overextended ERISA's protections regarding benefit and coverage issues to prevent operation of the common fund doctrine. "The common-fund doctrine is general; its effect on

plans is incidental." *Id.* at 496. Thus, controlling authority indicates Primax would not be permitted to "**free ride** on the efforts of the plan participant's attorney, contrary to the equitable concept of 'common fund' that governs the allocation off attorney's fees in cases in which the lawyer hired by one party creates through his efforts a fund in which others are entitled to share as well." *Wal-Mart Stores Health & Welfare Plan,* 213 F.3d at 403 (citations omitted)(emphasis added).

Moreover, Primax received adequate consideration for its waiver. Primax' waiver released its claims against Sevilla so Primax no longer had to pursue them and, more important, gave Primax the chance to attempt to moot Sevilla's class action countersuit and to remove Sevilla as class representative. The fact the waiver failed to moot Sevilla's class claims is immaterial; the fact Primax received value in the form of the opportunity to dispose of Sevilla's class action counterclaim is relevant and determinative. "In the law of contracts, consideration is relatively easy to show." *Wagner v. Nutrasweet Co.,* 95 F.3d 527, 532 (7th Cir. 1996)(consideration is adequate so long as the person receives something of value in exchange for her promise or detriment). Similarly, this court adheres to the accepted wisdom that it should not inquire into the adequacy of the consideration to support a

19

promise, only its existence. "As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration." *Id.; see also Rinaldi v. World Book, Inc.*, No. 00 C 3573, 2001 WL 477145, at *5+ (N.D.Ill. May 3, 2001); *Clearclad Coatings, Inc. v. Xontal Ltd.*, No. 98 C 7199, 1999 WL 652030, at *12 (N.D.Ill. Aug 20, 1999).

### III. Advisory Opinions

Therefore, since Primax has waived its rights to reimbursement and claims associated therein, there is no actual controversy for this court to rule upon and Primax cannot obtain the relief it seeks.

Primax maintains it waived its right to reimbursement from Sevilla but somehow defines this waiver narrowly, i.e. Primax argues it "waived and released any and all rights and claims to subrogation and/or reimbursement they may have had, now have, or hereafter acquire concerning an accident involving Richard Sevilla which occurred on or about May 23, 1992" but did not waive its right to seek an interpretation and adjudication of the reimbursement language. As stated earlier, Primax' waiver was broad, unconditional and inclusive of both ERISA and non-ERISA claims. Primax' waiver includes a waiver of Primax' ability to ask the court to review, interpret and adjudicate the reimbursement policy in light of

20

Illinois' common fund doctrine. Primax waived completely its rights to reimbursement, i.e. Primax waived its rights to reimbursement for the $2,483.71 at issue and its right to request equitable relief in the form of an interpretation and declaratory judgment of any possible conflict between federal and state law here. The court will not now revise Primax' waiver to narrow its scope.

Further, even if the court were to determine the rights of the parties to the funds in question, as Primax asks this court to do, since Primax has waived its rights to these funds in the present matter, Primax is unable to obtain the relief it seeks and such an interpretation would only be an advisory opinion. As stated above, a plan fiduciary must establish a case or controversy exists pursuant to Article III to obtain declaratory or injunctive relief.

Article III of the Constitution limits the exercise of judicial power to "cases" and "controversies." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *Aetna Life Ins. Co.,* 300 U.S. at 239. Since a federal court does not have the power to "render advisory opinions," the court's "judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citing *Aetna Life*

*Ins. Co.*, 300 U.S. at 241). The case or controversy requirement "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action." *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir.1994). "[D]istrict judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or controversy must be present at every moment of the litigation." *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir.1999).

The constitutional imperative against issuance of advisory opinions is unmistakable. Such opinions are prohibited because they "undermine the basic tenants of the Article III case or controversy requirement," *Planet Hollywood, Inc. v. Hollywood Casino Corp.*, 80 F.Supp.2d 815, 871-72 (N.D.Ill. 1999)(quoting *Joint Stock Soc'y v. UDV North America, Inc.*, 53 F.Supp. 692, 706 (N.Del. 1999)), and would be "beyond our constitutional power" to render. *Starter Corp. v. Converse*, 84 F.3d 592, 595 (2nd Cir. 1996)(citing *Aetna Life Ins.* Co., 300 U.S. at 241).

> [A] federal court is not allowed to express an advisory opinion about the implications of some possible future course of action undertaken pursuant to a hypothetical business plan, because if it did the door would open to unlimited efforts

> by companies who want to obtain an advisory opinion
> from a federal court in an effort to limit their
> potential liability before incurring any costs
> which might prove to have been wastefully expended
> should the court find against them.

*Planet Hollywood, Inc.*, 80 F.Supp.2d at 872 (quoting *Joint Stock Soc'y*, 53 F.Supp.2d at 705-706).

In particular, "[a] party bringing a declaratory judgment action must show an actual controversy and a direct injury or threat of injury that is 'real or immediate, not conjectural or hypothetical.'" *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1353 (7th Cir.1987) (quoting *Foster v. Central Township of LaPorte County*, 798 F.2d 237, 242 (7th Cir.1986)); *see also Holstein v. City of Chicago*, 803 F.Supp 205, 208 (N.D.Ill. 1992).

Here, Primax waived completely its rights to reimbursement and has waived its rights to raise ERISA and non-ERISA claims arising out of the present facts, i.e. Primax waived its right to reimbursement for the $2,483.71 and its right to request equitable relief in the form of an interpretation and declaratory judgment of any possible conflict between federal and state law here. However, even if Primax were correct, and its asserted waiver was limited to allow it to renounce its rights to the money at issue but to permit it to ask this court to interpret its reimbursement policy in light of Illinois' common fund doctrine and to

determine the rights of the parties to these funds, then this court would merely be issuing an advisory opinion for future litigants. Thus, if the court were to interpret Primax only waived non-ERISA, state court rights of reimbursement; and if the court further was to interpret and adjudge the Plan regarding its reimbursement policy pursuant to ERISA; and if the court was to further find the federally-covered ERISA Plan preempts the application of the Illinois state "common fund doctrine"; and if the court was to then determine the rights of the parties to the funds at issue and find Primax was entitled to these monies; then since Primax has admitted it waived its right to reimbursement for these funds, the court would merely be issuing an advisory opinion.

Since no case or controversy exists, this court lacks subject matter jurisdiction, i.e. the parties are not diverse and the present dispute does not involve a federal question. The Court in *Great-West Life* indicated ERISA plans and fiduciaries generally may seek enforcement of reimbursement policies only in state court.[2] *Great-West Life & Annuity Ins. Co.* at 15-16. Further, the Illinois Appellate Court has already found the state court has jurisdiction to hear

---

[2] The Court left unanswered "whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been preempted by ERISA." *Great-West Life & Annuity Ins. Co.* at 15-16.

Sevilla's counterclaim. *Health Cost Controls v. Sevilla*, 718 N.E.2d 558, 565-66 (Ill.App.Ct. 1999).

So, while the courts have yet to clarify any conflict between ERISA and states' common fund laws, *see Wal-Mart Stores Health & Welfare Plan*, 213 F.3d at 403, and while Primax presumably desires a declaration and definition for its business operations, this is not the case and these are not the facts to address those matters.

## CONCLUSION

For the above reasons, Sevilla's Motion for Summary Judgment is GRANTED and Primax' Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

**DATED**: January 11, 2002

**WILLIAM J. HIBBLER, DISTRICT JUDGE**